1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   LEON LEE MEYERS,                    No. C-11-5327 TEH (PR)

12            Petitioner,               ORDER DENYING PETITION FOR WRIT
                                        OF HABEAS CORPUS; DENYING
13        v.                            MOTION FOR MARTINEZ/TREVINO
                                        EVIDENTIARY HEARING; DENYING
14   ANTHONY HEDGPETH, Warden,          CERTIFICATE OF APPEALABILITY

15            Respondent.

16   _____/

17

18        Leon Lee Meyers, a state prisoner incarcerated at Solano

19   State Prison, has filed this pro se petition seeking a writ of

20   habeas corpus under 28 U.S.C. § 2254.  Respondent has filed an

21   answer and Petitioner has filed a traverse.  Petitioner has also

22   filed a motion for a Martinez/Trevino hearing and to defer ruling on

23   the final amended petition.  Docket No. 84.  For the reasons

24   discussed below, both the petition and the request for a

25   Martinez/Trevino hearing are DENIED.

26                                   I

27        On October 16, 2009, an Alameda County jury found

28

Petitioner guilty of assault on a police officer resulting in great bodily injury (Cal. Penal Code § 245(c)), battery on a person with whom Petitioner had a dating relationship (Cal. Penal Code § 243(e)(1)), and resisting a police officer resulting in serious bodily injury (Cal. Penal Code § 148.10(a)).  Clerk's Transcript[1] ("CT") at 1822-25.  The jury also found the following enhancement allegations to be true: one prior serious felony conviction within the meaning of section 667(a) of the California Penal Code; nine prior strike convictions within the meaning of sections 667(e)(2) and 1170.12(c)(2)of the California Penal Code; four prior prison terms within the meaning of section 667.5(b)of the California Penal Code.  CT at 1826-27.  On December 18, 2009, the trial court sentenced Petitioner to an indeterminate term of 33 years to life. CT at 1995-97.

Petitioner appealed his conviction in the California Court of Appeal.  CT 1999 and Answer, Ex. C.  On March 4, 2011, the California Court of Appeal filed an unpublished opinion affirming the judgment.  People v. Meyers, No. A127223, 2011 WL 766932 (Cal. Ct. App. Mar. 4, 2011) and Answer, Ex. F.  On June 8, 2011, the California Supreme Court denied Petitioner's petition for review. Answer, Ex. H.  Petitioner also filed a number of other petitions for review with the California Supreme Court.  Docket No. 54, Exs. A-H.

On November 2, 2011, Petitioner filed the instant federal

---

[1]The Clerk's Transcript is located at Docket No. 82 ("Answer"), Ex. A.

2

petition.  Docket No. 1.  Petitioner sought to amend his petition multiple times.  Docket Nos. 12, 16, and 19.  The Court instructed Petitioner to file a final amended petition encompassing all claims he wished to present.  Docket No. 21.  On July 27, 2012, per the Court's order, Petitioner filed a final amended petition.  Docket No. 26.  On May 15, 2014, the Court granted Respondent's motion to dismiss 44 claims for failure to exhaust state remedies and issued an order to show cause as to why the remaining 10 claims of the final amended petition should not be granted.  Docket No. 65.

## II

The following factual background is taken from the order of the California Court of Appeal.[2]

### Prosecution Case

In 2006, Debra Ann Singletary was dating appellant and living at his house. On June 6, 2006, appellant drove Singletary to San Francisco so she could pick up and cash her brother's social security check for nearly $900. After Singletary cashed the check, appellant drove to what appeared to be a dead-end street and punched her in the face, demanding $200. When Singletary refused, appellant choked her and bit her arm. Singletary reached for a gun under the seat; appellant responded by throwing Singletary out of the car. As Singletary tried to walk down the street, appellant blocked her path with his car. Then appellant got out of the car and began chasing Singletary. Appellant caught Singletary and forced her back into the car. [FN 3]

FN 3: At trial, Singletary testified that she lied during a police interview on June 8, 2006 because she "had a warrant and the police officer said that if [she] was to make a written statement and testify, that they wouldn't take [her] to jail." Singletary testified appellant did not hit, choke, or bite her and that she did not scream or cry out for help. She

[2]This summary is presumed correct.  Hernandez v. Small, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

3

explained she received the bite marks during a fight in a casino. The prosecutor, however, impeached Singletary with a transcript of the police interview and with a letter Singletary wrote to the police in September 2009.

On the evening of June 6, 2006, Officer McNeely responded to a report of a Black male "that was possibly hitting" a woman in a Camaro. McNeely and another officer, Officer Diane Jim, responded to the call. McNeely stopped the car. Jim approached the passenger side of the car where Singletary was sitting and told appellant to turn off the car. He complied. Before Jim could say anything, appellant "said that he and [Singletary] had just been arguing." Appellant "was sweating and he looked really nervous." Singletary seemed "very nervous ... or very afraid. She was very upset. And she looked like she was going to cry." Singletary asked Jim if she could get out of the car, and Jim granted her request because Singletary seemed afraid of appellant.

McNeely approached appellant in the driver's seat of the Camaro. He requested appellant's identification and asked appellant whether he was on probation or parole. Appellant lied, telling McNeely that he "just got off of probation for the sales of narcotics" when he was actually still on probation. McNeely explained to appellant he was investigating a report of domestic violence and that appellant's car matched the description in the report. McNeely also explained that appellant's car did not have license plates. Appellant seemed nervous. He was sweating, his hands were shaking, and he was "stalling a little bit" when he answered McNeely's questions.

McNeely then began a records check on appellant. As he waited for the results, Jim told him that appellant had hit and bitten Singletary and that there was a gun under the driver's seat of the car. At that point, McNeely decided to arrest appellant. He approached appellant, who was still sitting in the driver's seat of the car. Appellant's arm was hanging out of the window, and McNeely thought it would be "fairly easy" to handcuff appellant. McNeely grabbed appellant's wrist and told him to put his other hand behind his back. In a calm voice, McNeely explained that appellant was being detained "for further investigation of domestic violence."

At that point, appellant tried to get out of the car, which made McNeely concerned that appellant would get the gun "to engage in a gun fight." The car door was open and McNeely was standing "pretty much in the middle of the doorway of the vehicle." McNeely grabbed appellant by the

4

back of the neck and pushed him back into the car to "gain control of him and push his head towards the steering wheel." McNeely instructed appellant to slowly put his right hand behind his back; in response, appellant said, " 'All right, [a]ll right, [a]ll right.' " But as appellant began to comply with McNeely's order, he suddenly started the ignition and put the car into drive. Appellant's car began to "accelerate[ ] at a high rate of speed" but McNeely was unable to get away from the door. When McNeely felt a hard tug on his gun holster, he realized he was caught in the door; he tried to run to keep up with the car and began to yell, "Stop the car, stop the car." Appellant did not stop the car.

As the car accelerated, McNeely lost his footing and fell. McNeely continued to yell at appellant to stop the car, but appellant did not stop. Eventually, McNeely was able to free his gun holster from the frame of the door. As he dislodged the holster, he fell to the pavement as appellant accelerated to approximately 30 miles per hour. McNeely faded in and out of consciousness and awoke in the hospital.

After the incident, Jim found Singletary hiding behind a parked SUV. The officers eventually subdued appellant with a taser, arrested him, and searched him. They found a crack pipe and rock cocaine.

Defense Case

On June 6, 2006, appellant and Singletary were driving in appellant's Camaro when they got into a disagreement. Appellant decided to end his relationship with Singletary and told Singletary to get out of the car. She did not, and appellant "physically force[d] her out of the car." He did not bite or punch her; he "only forced her to get out of the car because she refused to get out." Appellant then drove to a friend's house. Singletary walked up to the house and started "yelling for [appellant] to take her to get her clothes now." Appellant and Singletary got back into the car; almost immediately thereafter, police officers stopped appellant's car. Appellant did not have a gun in his car, but he did have access to one at home.

McNeely walked up to appellant's side of the car and stood next to the door. He explained that he was responding to a domestic violence report. After he obtained appellant's driver's license and information and performed a records check, McNeely grabbed appellant's wrist, pulled it back, and opened the car door. Appellant turned away to try to alleviate the pain and said, "'You don't have to twist my arm like this. Am I under arrest?'"

5

McNeely grabbed appellant's neck and "slammed" appellant's head against the steering wheel. [FN 4] Appellant saw "darkness and stars." As appellant told McNeely that he "didn't ... deserve this," McNeely kneed him in the side several times. Appellant did not try to get out of the car, but after McNeely kneed him, appellant "slammed [his car] into gear." "The car took off...." As the car accelerated, McNeely "made a quick attempt to snatch [appellant] out of the car" by grabbing appellant's jeans and the back of his shirt. Appellant was "looking straight ahead" and could hear his car's tires "screeching." He did not hear McNeely yelling at him to stop the car. Appellant drove off because McNeely "wouldn't get off me. He wouldn't let up." He explained that he did not remember dragging McNeely; he had "no idea" McNeely was running to try to keep up with the car, or that McNeely was dragging behind the car.

> FN 4: In appellant's booking photograph, which was admitted into evidence, the area around appellant's eyes is swollen.

Appellant testified that Singletary lied to police and that the police report was inaccurate and "false." Appellant admitted suffering prior convictions for possession of a controlled substance, possession of a controlled substance for sale, second degree burglary, and escape by a convicted felon.

Meyers, 2011 WL 766932, at *1-*3.

### III

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review.  A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the

6

state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Additionally, habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (internal quotation marks omitted).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the

7

"unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.  Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'"  Felkner v. Jackson, 131 S. Ct. 1305, 1307 (2011).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence.  "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous."  Mitchell v. Esparza, 540 U.S. 12, 17 (2003).

When applying these standards, the federal court should review the "last reasoned decision" by the state courts.  See Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  When there is no reasoned opinion from the state's highest court, the court "looks through" to the last reasoned opinion.  See Ylst, 501 U.S. at 804.

8

With these principles in mind regarding the standard and scope of review on federal habeas, the Court addresses Petitioner's claims.

## IV

## A

Petitioner contends that the trial court erred when it refused to allow him to enter a plea of not guilty by reason of insanity.  Docket No. 26 ("Amended Pet.") at 11.[3]  The state appellate court denied this claim as follows:

> In September 2006, appellant pleaded not guilty to the charges. Over three years later – on the third day of trial - appellant moved to change his plea of not guilty to a plea of not guilty by reason of insanity. The prosecutor opposed the motion, noting that appellant had entered a not guilty plea three years earlier and "[t]here has been no indication in the last three years, despite his obvious reference[s] to his own mental state, that he wished to proceed by not guilty by reason of insanity. We are now in a trial court, moments away from picking a jury." In response, defense counsel argued the new plea was necessitated by the court's denial of appellant's motion to admit evidence of his mental state. The court denied the motion, concluding appellant had not demonstrated good cause to change the plea.
>
> A trial court may allow a defendant to change a plea after the commencement of trial only where the defendant demonstrates good cause for the change of plea. (§ 1016, subd. (6); People v. Boyd (1971) 16 Cal.App.3d 901, 908; People v. Lutman (1980) 104 Cal.App.3d 64, 66; 4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Pretrial Proceedings, § 284, p. 497.) A defendant demonstrates good cause by showing "a plausible reason for delay in tendering any plea." (Lutman, supra, 104 Cal.App.3d at p. 68.) Here, counsel for appellant conceded the court's ruling excluding evidence of appellant's mental state

---

[3]Citations to pages in the parties' filings will be to the page numbers applied by the Court's docketing system, which are found at the top of each page, and not to the page numbers assigned by the parties or found at the bottom of each page.

1

2

3

4

5

> prompted the change of plea. As the trial court
> recognized, this does not constitute "good cause."
> Accordingly, the court did not abuse its discretion by
> denying appellant's motion to change his plea. (Witkin &
> Epstein, supra, § 284 at p. 497 [noting that "[t]he
> court's discretion in denying permission to add an
> insanity plea will normally be upheld" and citing
> cases].)

Meyers, 2011 WL 766932, at *3-*4.

6

7

8

9

10

11

12

13

14

15

        To the extent that Petitioner is arguing that the trial

court erroneously applied or interpreted state law, e.g., that the

trial court incorrectly found that he had not demonstrated the good

cause required by section 1016 of the California Penal Code, no

federal habeas relief is available.  The Supreme Court has

repeatedly held that federal habeas writ is unavailable for

violations of state law or for alleged error in the interpretation

or application of state law.  See Swarthout v. Cooke, 562 U.S. 216,

222 (2011).

16

17

18

19

20

21

22

23

24

25

26

27

        However, when a state statute creates a protected "liberty

interest," the violation of that state law raises federal

constitutional concerns on federal habeas corpus.  See Bonin v.

Calderon, 59 F.3d 815, 841 (9th Cir. 1995) ("Bonin I").  A protected

liberty interest may be created by state law, but only in limited

circumstances.  See Ky. Dep't of Corr. v. Thompson, 490 U.S. 454,

460-63 (1989).  In order for a state law to create a "liberty

interest" protected by the Due Process Clause, the state law must

meet two requirements: the law must set forth "substantive

predicates" governing official decision making and must contain

"explicitly mandatory language," i.e. a specific directive to the

decision-maker that mandates a particular outcome.  Id.; see also

28

10

<u>Bonin I</u>, 59 F.3d at 842.  Neither of these requirements were met in this instance.  Section 1016 states in relevant part: "A defendant who does not plead not guilty by reason of insanity shall be conclusively presumed to have been sane at the time of the commission of the offense charged; provided, that the court may for good cause shown allow a change of plea at any time before the commencement of the trial."  There are no substantive predicates that govern the trial court's decision as to whether to allow a defendant to change a not guilty plea to a plea of not guilty by reason of insanity.  Nor is there explicitly mandatory language regarding the change of plea.  On the contrary, section 1016 allows trial courts the discretion to allow a change of plea if good cause is shown.  Section 1016 does not create a federal liberty interest.  <u>Clemons v. Mississippi</u>, 494 U.S. 738, 747 (1990) (no liberty interest where state did not create entitlement).  Therefore, section 1016 does not create a federal liberty interest.

Petitioner has cited no United States Supreme Court authority for the proposition that a criminal defendant has a constitutional right to change a plea from not guilty to not guilty by reason of insanity after the commencement of trial but prior to the empanelment of the jury.  Nor is the Court aware of any such authority.

Accordingly, the state appellate court's denial of the claim was not contrary to, or an unreasonable application of, clearly established Federal law.  Petitioner is not entitled to habeas relief on this claim.

11

1

B

2      Petitioner contends that the trial court abused its

3  discretion by denying his Marsden motions for new counsel, thereby

4  denying him his right to counsel under the Sixth Amendment.   Amended

5  Pet. at 11.   The state appellate court denied his claim as follows:

6          Appellant made 12 Marsden motions to discharge his
           appointed counsel. Appellant challenges the court's
7          denial of nine of the Marsden motions he made during
           trial and one post-trial Marsden motion. [FN 5]

8
9              FN 5: Appellant does not challenge the court's
               denial of three Marsden motions he made in 2007.

10         On September 17, 2009, appellant complained that
           appointed counsel failed to prepare adequately for trial,
11         specifically that counsel failed to contact witnesses and
           obtain documents relevant to his defense. During a closed
12         Marsden hearing, appointed counsel explained that he had
           filed approximately 20 motions regarding "the areas that
13         Mr. Meyers has concern about.... And those range from an
           argument that the detention wasn't proper, the arrest
14         wasn't proper for a variety of reasons, and any number of
           issues that I have been able to satisfy myself had legal
15         merit." Counsel conceded that he had some questions about
           appellant's mental state and could have obtained expert
16         testimony about appellant's mental state notwithstanding
           the fact that the court had declared appellant competent.
17         The court denied the Marsden motion because, among other
           things, appellant had not demonstrated "incompetence of
18         appointed counsel." The court determined "there has not
           been a breakdown in the relationship between [appointed
19         counsel] and Mr. Meyers which would make it impossible
           for [appointed counsel] to effectively represent Mr.
20         Meyers."

21         On September 28, 2009, appellant filed another Marsden
           motion complaining that appointed counsel had: (1)
22         withdrawn a meritorious Pitchess motion; (2) failed to
           file a motion in limine to exclude hearsay and other
23         evidence; (3) failed to properly articulate the arguments
           in favor of entering a late plea of not guilty by reason
24         of insanity; and (4) refused to take his telephone calls.
           Following a Marsden hearing, the court denied the motion.
25         The court concluded appellant had not demonstrated
           appointed counsel was incompetent and explained that
26         appellant's "lack of confidence in the performance of
           appointed counsel is not a basis for a substitution" of

27

28                                    12

counsel.

Two days later, on September 30, 2009, appellant made two additional Marsden motions claiming that appointed counsel failed to seek appellate review of motions the trial court denied, did not contact witnesses, and "[was] not professionally articulating hi[m]self to the people," causing everyone in the courtroom "to laugh at him." Counsel conceded that his communication with appellant was not as complete as appellant would like. On October 1, 2009, appellant made another Marsden motion, complaining that appointed counsel had not allowed him to participate in the trial, would not communicate with him, and would not ask questions appellant proposed. Following a Marsden hearing, the court rejected these arguments and denied the motions. The court noted that a disagreement about "trial tactics" did not require a substitution of counsel.

On October 5, 2009, appellant made another Marsden motion, this time complaining about appointed counsel's refusal to cross-examine witnesses in the manner appellant proposed. Appellant also claimed counsel failed to tell the jurors about an "uncharged offense that was refused by the District Attorney's Office." The court denied the motion. It noted the difficulty appointed counsel was having questioning witnesses when appellant was "talking, talking, talking" in counsel's ear and explained that any disagreement between counsel and appellant concerned trial strategy. The court also determined the motion was untimely.

Two days later, appellant made another Marsden motion. He complained that appointed counsel failed to object to certain evidence and failed to present evidence to the jury. The next day, on October 8, 2009, appellant requested a substitution of counsel because appointed counsel would not let him testify. Appellant also complained that appointed counsel failed to present certain evidence and failed to object to other evidence. On October 26, 2009, appellant made his final Marsden motion, restating many of the same complaints about his appointed counsel. The court denied these motions for the reasons discussed above.

"When a defendant seeks new counsel on the basis that his appointed counsel is providing inadequate representation – i.e., makes what is commonly called a Marsden motion [citation] – the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that

13

the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result. Substitution of counsel lies within the court's discretion. The court does not abuse its discretion in denying the motion unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel. [Citation.]" (People v. Smith (2003) 30 Cal.4th 581, 604; People v. Gutierrez (2009) 45 Cal.4th 789, 803; People v. Taylor (2010) 48 Cal.4th 574, 599.)

The trial court "did not abuse its discretion by concluding that it was unnecessary to substitute counsel." (People v. Gutierrez, supra, 45 Cal.4th at pp. 803-804.) It is well settled that disagreements over trial tactics do not warrant a substitution of counsel under Marsden. (People v. Welch (1999) 20 Cal.4th 701, 728-729, overruled on other grounds as stated in People v. Blakeley (2000) 23 Cal.4th 82, 90-91; People v. Williams (1970) 2 Cal.3d 894, 905; 5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Trial, § 159, p. 250.) Appellant's complaints that appointed counsel did not call appellant's witnesses and failed to properly investigate and present the evidence are disagreements over trial tactics. Numerous courts have upheld the trial court's denial of a Marsden motion where the defendant and appointed counsel disagree about how the case should be tried. (People v. Carr (1972) 8 Cal.3d 287, 299; People v. Hisquierdo (1975) 45 Cal.App.3d 397, 403; People v. Rhines (1982) 131 Cal.App.3d 498, 505.)

"A defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense. [Citations.] Tactical disagreements between the defendant and his attorney do not by themselves constitute an 'irreconcilable conflict.' "(People v. Welch, supra, 20 Cal.4th at pp. 728-729 .) "There is no constitutional right to an attorney who would conduct the defense of the case in accord with the whims of an indigent defendant. [Citations.] Nor does a disagreement between defendant and appointed counsel concerning trial tactics necessarily compel the appointment of another attorney." (People v. Lucky (1988) 45 Cal.3d 259, 281-282.)

Nor did appellant's claims that he "did not trust" appointed counsel and "believed that counsel had not represented him properly" require the trial court to substitute counsel. A defendant's lack of confidence in appointed counsel is insufficient to warrant a

14

> substitution. (People v. Floyd (1970) 1 Cal.3d 694,
> 704-705, overruled on another point in People v. Wheeler
> (1978) 22 Cal.3d 258, 287, fn. 36.) Finally, appellant's
> reliance on a single case - People v. Crandell (1988) 46
> Cal.3d 833, 854, overruled on other grounds in People v.
> Crayton (2002) 28 Cal.4th 346, 364-365 - is misplaced. In
> Crandell, the California Supreme Court concluded that
> "the Marsden procedures were not required" because "no
> request for substitute counsel was made in [the trial]
> court." (Id. at p. 855.) Crandell has absolutely no
> application here.

Meyers, 2011 WL 766932, at *4-*6.

The denial of a motion to substitute counsel implicates a

defendant's Sixth Amendment right to counsel and is properly

considered in federal habeas.  Bland v. Cal. Dep't of Corr., 20 F.3d

1469, 1475 (9th Cir. 1994), overruled on other grounds by Schell v.

Witek, 218 F.3d 1017 (9th Cir. 2000) (en banc).  The ultimate

inquiry in a federal habeas proceeding is whether the trial court's

denial of the motion "actually violated [petitioner's]

constitutional rights in that the conflict between [petitioner] and

his attorney had become so great that it resulted in a total lack of

communication or other significant impediment that resulted in turn

in an attorney-client relationship that fell short of that required

by the Sixth Amendment."  Schell, 218 F.3d at 1026.  If a serious

conflict resulted in the constructive denial of counsel, no further

showing of prejudice is required and the petitioner's trial is

presumed to have been unfair.  Schell, 218 F.3d at 1027.  But if a

serious conflict did not rise to the level of a constructive denial

of counsel, the petitioner must prove that he was prejudiced by the

conflict.  Id. at 1028.

The state appellate court's denial of this claim was not

an unreasonable determination of the facts.  Nor was the denial contrary to, or an unreasonable application of, clearly established Federal law.  The record supports the trial court's finding that Petitioner's complaints about appointed counsel were disagreements over trial tactics.  The record shows that Petitioner disagreed with counsel as to what additional investigation should be undertaken; whether additional motions should be filed; which arguments should be presented; which additional witnesses should be presented; the questions asked on cross-examination; and the failure to object to certain evidence.  A difference of opinion as to trial tactics does not constitute denial of effective assistance.  See United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981).  Petitioner has not established that trial counsel's performance was deficient.  See Strickland, 466 U.S. at 687 (the proper standard for attorney performance is that of reasonably effective assistance).  Accordingly, the trial court's denial of Petitioner's Marsden motions did not deny Petitioner his right to counsel.

Moreover, Petitioner fails to establish a reasonable probability that he was prejudiced by the denial of the Marsden motions.  Petitioner has not established that trial counsel's performance was deficient, or that another attorney would have conducted the trial as Petitioner wished.  Habeas relief is denied on this claim.

C

Petitioner contends that the trial court prejudicially erred when it allowed the prosecutor to introduce evidence of a

16

prior incident involving San Leandro police officers.    Amended Pet.

at 11.  The state appellate court denied the claim as follows:

> Before trial, the prosecution moved to admit evidence of
> appellant's 2002 assault on a police officer (2002
> incident) [FN 6] to negate appellant's claim that "he was
> reacting in self-defense to an unlawful and excessive use
> of forced by [ ] McNeely" and that "it was only a matter
> of accident or mistake that [ ] McNeely got stuck in the
> car and dragged." The prosecution argued the evidence was
> relevant to show intent, motive, and common scheme or
> plan. Appellant opposed the motion. After a hearing, the
> court admitted the evidence, determining it was relevant
> to prove appellant's "motive, his intent, his common
> scheme and plan and his knowledge, the fact that under
> these circumstances the police officer would, in fact,
> have been injured." The court also determined the
> probative value of the evidence outweighed any prejudice
> to appellant. We review the court's ruling for abuse of
> discretion. (People v. Kipp (1998) 18 Cal.4th 349, 369;
> People v. Lewis (2001) 25 Cal .4th 610, 637.)
>
>> FN 6: Appellant was arrested on October 10, 2002 and
>> charged with possession of cocaine base for sale
>> (Health & Safety Code, § 11351.5) and resisting
>> arrest (§ 148, subdivision (a)(1)). Appellant pled
>> guilty to the narcotics offense.
>
> At trial, San Leandro Police Officer Brian Anthony
> testified that he and his partner, Officer Derrick Schutz,
> were patrolling an area of San Leandro on October 10, 2002
> in a marked patrol car. Both officers were dressed in
> uniform. The officers saw a man, later identified as
> appellant, driving a Lincoln Town Car with expired
> registration and no front license plate. The officers
> stopped appellant's car and Schutz told appellant "why he
> was pulled over." Appellant said "Yes, I am on probation"
> in a voice that indicated "he was bothered" by the
> officers' presence. Appellant was "getting kind of tensed
> up" and began to "raise his voice at Officer Schutz." He
> said, "'Just leave me alone, just leave me alone. Can't
> you guys just leave me alone....'"
>
> Schutz repeatedly asked appellant to turn off the
> ignition, but appellant refused. Schutz reached into the
> car to turn off the ignition so the officers could take
> appellant out of the car to conduct a probation search. At
> that point, appellant grabbed Schutz's arm with both hands
> and appellant's car began to move forward. Schutz had
> about half of his body in the car while appellant was
> holding his arm. While Schutz was "trying to break free of

17

[appellant's] grasp of his arm," appellant "was trying to put the car into drive again." Both officers yelled at appellant to turn off the car; Schutz began hitting appellant in the head with his fist "because he wanted to break free of the grasp and actually get out of the car window so he wouldn't be [dragged]." Anthony was concerned that if appellant put the car in drive, both officers would have been dragged and injured, so he sprayed appellant with pepper spray. In response, appellant released Schutz's arm and Anthony removed the keys from the ignition. Appellant scooted across the bench seat, got out of the passenger side door, and tried to run away from the officers.

Appellant contends the court "prejudicially erred" by admitting evidence of the 2002 incident because the two incidents were not sufficiently similar and because the evidence was more prejudicial than probative. Pursuant to Evidence Code section 1101, [FN 7] evidence of other crimes or bad acts is inadmissible when offered to show a defendant had the criminal disposition or propensity to commit the crime charged. (§ 1101, subd. (a).) Evidence of other crimes or misconduct by a defendant is admissible, however, to prove a fact (i.e., motive, intent, or absence of mistake or accident) other than a disposition to commit such acts and may be admissible to negate a claim of good-faith belief or other innocent mental state. (§ 1101, subd. (b); People v. Ewoldt (1994) 7 Cal.4th 380, 402 (Ewoldt).) Evidence of an uncharged crime is admissible only if it has "substantial probative value that is not greatly outweighed by the potential that undue prejudice will result from admitting the evidence. [Citations.]" (People v. Lenart (2004) 32 Cal.4th 1107, 1123.)

> FN 7: Unless otherwise noted, all further statutory references are to the Evidence Code. Section 1101, subdivision (b) provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

Evidence of the 2002 incident was relevant to prove the absence of mistake or accident, because appellant claimed he accidentally dragged McNeely. [FN 8.] In both incidents, appellant was uncooperative with police

18

officers during a traffic stop. In both incidents, police officers were reaching into appellant's car to restrain him or stop him from leaving; in both incidents, appellant tried to escape by driving away with a police officer hanging from his car. The incidents are sufficiently similar to support an inference that appellant intentionally assaulted McNeely rather than mistakenly dragging him in his attempt to escape. "'[T]he recurrence of a similar result ... tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act....' [Citation.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant '"probably harbor[ed] the same intent in each instance." [Citations.]'" (<u>Ewoldt</u>, <u>supra</u>, 7 Cal.4th at p. 402.)

> FN 8: The trial court admitted the evidence to prove appellant's "motive, his intent, his common scheme and plan and his knowledge ... that under these circumstances, the police officer would, in fact, have been injured." "When the evidence is properly received the basis for the court's ruling is not material." (<u>People v. Williams</u> (1984) 44 Cal.3d 883, 911.)

Appellant argues that evidence of the 2002 incident was extremely prejudicial as a matter of law. From this premise, he reasons that the trial court prejudicially abused its discretion in finding the probative value of the evidence outweighed the prejudice under section 352. We disagree. "'In applying section 352, "prejudicial" is not synonymous with "damaging."'" (<u>People v. Callahan</u> (1999) 74 Cal.App.4th 356, 371.) "'Undue prejudice' refers not to evidence that proves guilt, but to evidence that prompts an emotional reaction against the defendant and tends to cause the trier of fact to decide the case on an improper basis: 'The prejudice which exclusion of evidence under ... section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. "[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is 'prejudicial.'"' [Citations.]" (<u>People v. Walker</u> (2006) 139 Cal.App.4th 782, 806; <u>People v. Killebrew</u> (2002) 103 Cal.App.4th 644, 650-651.)

The evidence was harmful to appellant, but it was not prejudicial in the sense that it would cause the jury to

19

> decide the case on an improper basis. Moreover, the court
> instructed the jury on how to evaluate the evidence of
> appellant's prior acts to avoid the possibility of undue
> prejudice. As a result, we conclude the court did not
> abuse its discretion by admitting evidence of the 2002
> incident.

**Meyers**, 2011 WL 766932, at *6-*8.

A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process.  See <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>see also</u> <u>Henry v. Kernan</u>, 197 F.3d 1021, 1031 (9th Cir. 1999) ("Even where it appears that evidence was erroneously admitted, a federal court will interfere only if it appears that its admission violated fundamental due process and the right to a fair trial.").  Even if an evidentiary error is of constitutional dimension, the court must consider whether the error was harmless under <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993).

Petitioner argues that the admission of the 2002 incident was improper because the San Leandro officers unlawfully arrested him; because the 2002 incident was not sufficiently similar to be admissible under section 1101 of the California Evidence Code; and because the probative value of the 2002 incident did not outweigh the prejudice.  Petitioner also alleges, in a conclusory fashion and without explanation, that the introduction of the 2002 incident was unconstitutionally prejudicial and violated his due process rights, his right to a fair trial, and the fundamental fairness guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States

20

Constitution.   Docket No. 83 ("Traverse") at 6.   To the extent
Petitioner is arguing that state law was violated, e.g. that the
2002 incident was inadmissible under section 1101 of the California
Evidence Code or that the incident was more prejudicial than
probative under section 352 of the California Evidence Code, these
claims are not cognizable in federal habeas.   Swarthout, 562 U.S. at
222, and Pulley, 465 U.S. at 41.   The admission of the 2002
incident, if erroneous, is cognizable in federal habeas only if it
violated federal law.

        After reviewing the record, the Court concludes that the
admission of the prior incident involving San Leandro police
officers did not deprive Petitioner of the fundamentally fair trial
guaranteed by due process.   As an initial matter, the state
appellate court's determination that the 2002 incident was properly
admitted is supported by the record.   The 2002 incident was admitted
to show Petitioner's motive to harm the victim and that Petitioner
was aware that the victim would be dragged if the car moved forward
while the victim was reaching into the car.   The incident was
relevant because Petitioner claimed that it was an accident or
mistake that the victim was dragged, and that he did not intend to
harm the victim but was acting in self-defense.   The incident was
similar in that in both cases the police officer was halfway in the
vehicle and the vehicle moved forward, causing the officer to be
dragged along with the car.   Petitioner's allegations that the San
Leandro officers unlawfully stopped him and that they were not
abiding by official procedures have no bearing on the incident's

21

admissibility.  Since the 2002 incident was properly admitted, it does not implicate due process or Petitioner's right to a fair trial.

Assuming arguendo that the 2002 incident was erroneously admitted, it would only violate due process "if there are no permissible inferences the jury may draw from the evidence." Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991) (admission of prior bad acts only violates due process if there are no permissible inferences).  In this instance, the evidence was admitted to show Petitioner's intent to harm the victim and to show knowledge of the consequences of allowing the car to move forward.  These are permissible inferences.  See, e.g., Boyde v. Brown, 404 F.3d 1159, 1172-73 (9th Cir. 2005) (constitutionally permissible way to show that defendant committed crime is to show that crime shared the same characteristics of defendant's previous crimes); Houston v. Roe, 177 F.3d 901, 910 n.6 (9th Cir. 1999) (prior bad acts properly admitted to show motive and intent); Walters v. Maass, 45 F.3d 1355, 1357-58 (9th Cir. 1995) (evidence that defendant used same ploy in prior kidnapping and rape was admissible to show intent).  Nor does the record support a finding that this alleged evidentiary error had a "substantial and injurious effect or influence in determining the jury's verdict."  The jury was instructed on how to properly evaluate the 2002 incident so as to avoid the possibility of undue prejudice,[4] and courts presume that juries follow curative

---

[4]The jury was instructed, in relevant part, as follows: "And evidence has been introduced for the purpose of showing that the defendant committed an act similar to constituting a crime other than

instructions.  <u>See</u> <u>Greer v. Miller</u>, 483 U.S. 756, 766 n.8 (1987);

<u>Doe ex rel. Rudy-Glanzer v. Glanzer</u>, 232 F.3d 1258, 1270 (9th Cir.

2000).  And there was overwhelming evidence that supported a finding

of Petitioner's guilt on all three charges.[5]  There was testimony

that Petitioner turned on the car ignition and accelerated the car

as Officer McNeely attempted to detain him.  There was evidence

presented that Officer McNeely was physically injured due to being

dragged by the car.  There was testimony that Petitioner then fled

the car and continued to evade arrest.  There was an anonymous phone

call that described an altercation between Petitioner and

Singletary; and Singletary's statements to the police officers

immediately during and after the incident corroborated the

allegations of assault.  Petitioner is not entitled to habeas relief

on this claim.

D

Petitioner contends that the trial court prejudicially

erred when it excluded evidence regarding police training and

that for which he is on trial.  This evidence, if believed, may not
be considered by you to prove that the defendant is of bad character
or that he has a disposition to commit crimes.  It may be considered
by you only for the limited purpose of determining if it tends to show
a motive for the commission of the crime charged, or a characteristic
method, plan, or scheme in the commission of criminal acts similar to
the method, plan or scheme used in the commission of the offense in
this case, which would further tend to show the existence of lack of
mistake, accident, or self-defense in the crime charged, and that the
defendant had knowledge or possessed the means that might have been
useful or necessary for the commission of the crime."  Docket No. 82,
Ex. B ("RT") at 1329-30.

[5]Petitioner argues that the evidence is unreliable or misleading
for various reasons.  However, it is the function of the jury -- not
of Petitioner -- to determine how much weight should be given to the
admissible testimony and evidence.

23

practices.  Amended Pet. at 11.  The state appellate court denied his claim as follows:

> Appellant sought to introduce Oakland Police Department Training Bulletins on handcuff techniques and high risk vehicle stops to support his claim that McNeely "used excessive force and was not acting in the performance of his duties." The prosecution objected, contending the evidence was irrelevant and would "only serve to confuse the issues and mislead the jury as to the law upon which the Court will so instruct. This case is not a civil employment action involving the adherence, or lack thereof, to an employer's handbook of policies."
>
> The court excluded the evidence, determining the evidence was more prejudicial than probative under section 352. The court explained, "I just think that's much more prejudicial than probative because under [section] 352, it would ... absolutely confuse the issues and mislead the jury. There would be a substantial creation of undue prejudice if I were to tell the jury that somehow these manuals, despite a modicum of probative value on training techniques, would, in fact, be something they should think about or even ... use to decide what happened on June 6, 2009.... [U]nder [section] 352, I do find that the use [or] any mention of these training manuals would be more prejudicial than probative inasmuch as they do not state the law. They merely indicate the potential techniques and guidelines for ... officers and hence, it's much more prejudicial [than] probative because it would create substantial danger of undue prejudice by confusing the issues and by misleading the jury." The court, however, permitted appellant to cross-examine McNeely on the training he received regarding high-risk vehicle stops and to argue during closing argument that McNeely "did not follow his training."
>
> Appellant claims the court erred by excluding the evidence because it was relevant to his defense that McNeely was using excessive force. [FN 9] This argument misses the point. The evidence may have been relevant, but the court excluded it on the basis that it was more prejudicial than probative pursuant to section 352. In any event, the cases upon which appellant relies - ostensibly to demonstrate the evidence was relevant - are inapposite because they concern civil lawsuits where the plaintiff alleged the use of excessive force by police officers. In addition, several of the cases are from other jurisdictions and are not binding. (Episcopal Church Cases (2009) 45 Cal.4th 467, 490.)

24

FN 9: Appellant does not contend he was denied the right to present a defense.

The court did not abuse its discretion by concluding the evidence was more prejudicial than probative. The bulletins, designed to guarantee officer safety, have no bearing on the impermissible use of unreasonable force and would have confused the jury. Finally, and even if we assume the court erred by excluding the police bulletins, any error was harmless because appellant cannot demonstrate it is reasonably probable a more favorable result would have been reached absent the error. (People v. Watson (1956) 46 Cal.2d 818, 835-836; People v. Alcala (1992) 4 Cal.4th 742, 790-791.) The court permitted appellant's counsel to cross-examine McNeely about his training and to suggest during closing argument that McNeely did not follow that training. In addition, the evidence at trial demonstrated appellant refused to follow McNeely's commands - just as he had done in a prior incident - and actively resisted arrest, injuring McNeely in the process.

Meyers, 2011 WL 766932, at *8-*9.

"[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."  Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (alteration in original) (internal quotation marks omitted); see also Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (holding that due process does not guarantee a defendant the right to present all relevant evidence).  This latitude is limited, however, by a defendant's constitutional rights to due process and to present a defense, rights originating in the Sixth and Fourteenth Amendments. See Holmes, 547 U.S. at 324.  "While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is

outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." <u>Id.</u> at 325-26; <u>see</u> <u>Egelhoff</u>, 518 U.S. at 43 (holding that the exclusion of evidence does not violate the Due Process Clause unless "'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"). But "at times a state's rules of evidence cannot be mechanistically applied and must yield in favor of due process and the right to a fair trial." <u>Lunbery v. Hornbeak</u>, 605 F.3d 754, 762 (9th Cir. 2010) (finding California's application of its evidentiary rules to exclude hearsay testimony that bore persuasive assurances of trustworthiness and was critical to the defense violated right to present evidence). The defendant, not the state, bears the burden to demonstrate that the principle violated by the evidentiary rule "is so rooted in the traditions and conscience of our people as to be ranked as fundamental." <u>Egelhoff</u>, 518 U.S. at 47 (internal quotation marks omitted).

In deciding if the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, the court balances the following five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. <u>Chia v. Cambra</u>, 360 F.3d 997, 1004 (9th Cir. 2004) (citing <u>Miller v. Stagner</u>, 757 F.2d 988, 994 (9th Cir. 1985)). The court

must also give due weight to the state interests underlying the state evidentiary rules on which the exclusion was based.  See <u>Chia</u>, 360 F.3d at 1006.  The <u>Miller</u> balancing test, however, is a creation of circuit law and, consequently, is not "clearly established law" for purposes of habeas corpus review under 28 U.S.C. § 2254(d)(1). <u>See</u> <u>Moses v. Payne</u>, 555 F.3d 742, 760 (9th Cir. 2009).  Thus, because the Supreme Court has considered whether an evidentiary rule, by its own terms, violated a defendant's constitutional right to present evidence, but has not directly considered whether a trial court's exercise of discretion to exclude evidence, under a constitutionally sound evidentiary rule, violated a defendant's constitutional right to present evidence, a state court's failure to apply the <u>Miller</u> balancing test is not contrary to or an unreasonable application of clearly established Supreme Court precedent.  <u>See</u> <u>id.</u> at 758-59.  The due process and Sixth Amendment limitations on the exclusion of critical corroborative defense evidence are clearly established federal law under AEDPA.  <u>See</u> <u>Chia</u>, 360 F.3d at 1003; <u>DePetris v. Kuykendall</u>, 239 F.3d 1057, 1062 (9th Cir. 2001).

Petitioner does not contend he was denied the right to present a defense.  <u>Meyers</u>, 2011 WL 766932, at *9 n.9.  The Court therefore evaluates whether the exclusion of these training bulletins denied him the right to a fair trial.  The Court finds that the appellate court correctly concluded that the bulletins had no bearing on the impermissible use of unreasonable force since the bulletins focused on officer safety and not what constituted

excessive force and unlawful performances of one's duties.  The
Court further agrees with the appellate court that the bulletins
would have confused the jury.  The jury might have incorrectly
presumed that these manuals set forth what officer actions would be
considered unconstitutional.  As the trial court noted, the opposite
is true: "Even if [the jurors] believe that this officer used some
technique other than what is in the two bulletins you're seeking to
present, that does not preclude them from finding that it was
lawful, the conduct, nor that it was reasonable and not excessive."
RT at 129.  The bulletins were not critical or corroborative defense
evidence.  Therefore, their exclusion did not violate Petitioner's
Fifth Amendment due process right to a fair trial.  Chia, 360 F.2d
at 1003.

Petitioner argues that even if the exclusion of the police
training bulletins alone did not constitute prejudicial error, the
exclusion of the bulletins combined with jury instruction error
"prevented the jury from determining that training and experience
would apply to any unlawful action committed by the officers,"
thereby denying Petitioner a fair trial.  Traverse at 6-7.
Petitioner's claim of instructional error has already been dismissed
by this Court as unexhausted.  Docket No. 65.  Accordingly, for the
purpose of this analysis, the Court examines only whether the
exclusion of the bulletins constituted prejudicial error.  Given
that the bulletins wore more prejudicial than probative in that they
went directly to the legal conclusion regarding the lawfulness of
Officer McNeely's actions, prejudicial error would occur if the

28

bulletins were admitted.  Moreover, the bulletins were intended to support the defense theory of the case, that Officer McNeely was not acting in the performance of his duties when he stopped Petitioner. On cross-examination, defense counsel was able to explore Officer McNeely's training regarding how to handcuff a suspect in a vehicle. RT at 657-62.  Under cross-examination McNeely admitted that his actions had been inconsistent with his training.  Id. at 657.  He testified that when trying to handcuff a suspect in a vehicle, he was never to reach inside the car for any reason; that if he saw a firearm in the vehicle, he was to retreat and respond to the incident as a high-risk vehicle-stop; that if the suspect made a furtive movement during the time the officer was trying to handcuff the suspect in the car, he was to back away and take cover and then take appropriate action.  McNeely also admitted that his high-risk vehicle stop training included instructing the suspect to turn off the ignition, throw the keys out the window, remove the seatbelt, and raise his or her hands so that the hands were visible.  Id. at 657-58.  McNeely also testified that he was required by his training to tell Petitioner what he was arrested for but that he failed to do so because he never got the chance.  Id. at 658.  Given the admissions that were elicited during trial on cross-examination, the Court finds that the exclusion of the training bulletins did not result in prejudicial error.

**E**

Petitioner contends that the trial court prejudicially erred when it permitted the prosecutor to introduce evidence of

**29**

prior domestic violence.   Amended Pet. at 11.   The state appellate

court denied his claim as follows:

> After Singletary testified at trial that appellant did not
> hit, choke, or bite her during the incident, and that she lied
> to police about the incident, the prosecutor moved to impeach
> Singletary with a transcript of her June 8, 2006 interview
> with the police and with a September 20, 2009 letter
> Singletary wrote to the police. In her interview and in her
> letter to the police, Singletary stated that appellant beat
> her, chased her with a gun, shot her, and took her money. She
> also told the police that appellant "tears up her clothes ...
> and 'always takes my money.' " The court granted the
> prosecutor's motion and allowed the prosecutor to introduce
> the transcript of the police interview and Singletary's letter
> to the police. We review the court's ruling for an abuse of
> discretion. (<u>People v. Alvarez</u> (1996) 14 Cal.4th 155, 201.)

> The trial court did not abuse its discretion by admitting
> Singletary's prior inconsistent statements to the police.
> "[S]ections 770 and 1235 except from the general rule against
> hearsay a witness's prior statement that is inconsistent with
> the witness's testimony in the present hearing, provided the
> witness is given the opportunity to explain or deny the
> statement or the witness has not been excused from giving
> further testimony in the action. [Citations.]" [<u>People v.
> Avila</u> (2006) 38 Cal.4th 491, 579.) [FN 10] Singletary's prior
> inconsistent statements to the police were admissible pursuant
> to sections 770 and 1235 because they directly contravened her
> trial testimony that appellant was "supportive" of her, that
> he had never hit, choked, or beaten her, and that he had never
> threatened her with a gun or shot her.

>> FN 10: Section 770 provides in relevant part: "Unless the
>> interests of justice otherwise require, extrinsic
>> evidence of a statement made by a witness that is
>> inconsistent with any part of his testimony at the
>> hearing shall be excluded unless: [¶] (a) The witness was
>> so examined while testifying as to give him an
>> opportunity to explain or to deny the statement...."
>> Section 1235 provides: "Evidence of a statement made by a
>> witness is not made inadmissible by the hearsay rule if
>> the statement is inconsistent with his testimony at the
>> hearing and is offered in compliance with Section 770."

> Appellant "does not acknowledge the applicability of ...
> sections 770 and 1235." (<u>People v. Avila</u>, <u>supra</u>, 38 Cal.4th at
> p. 580.) Instead, he contends the evidence should have been
> excluded because it would "surely engender great sympathy for
> Singletary and significantly bias any juror" against him.
> Again, his argument is unavailing. The prosecution had the

30

> right to rebut Singletary's trial testimony with her prior
> inconsistent statements to the police pursuant to sections 770
> and 1235. That the statements may have been damaging to
> appellant does not render them prejudicial in the context of
> section 352.

Meyers, 2011 WL 766932, at *10.

Petitioner argues that the admission of the prior domestic violence evidence was prejudicial error because the admission violated section 352 of the California Evidence Code because the evidence was inherently prejudicial and constituted prejudicial propensity evidence.[6]  He also argues that the June 8, 2006 police interview of Singletary was unlawful and that Singletary's statements were untruthful.   Traverse at 7-8.

To the extent that Petitioner argues that admission of the prior domestic violence evidence violated section 352 of the California Evidence Code, this claim is not cognizable.  The Supreme Court has repeatedly held that a federal habeas writ is unavailable for violations of state law or for alleged error in the interpretation or application of state law.  See Swarthout, 562 U.S. at 222.

As to the lawfulness of the June 8, 2006, police interview and the truthfulness of Singletary's statements, these assertions are not relevant in evaluating whether the prior domestic violence evidence should have been admitted and whether its admission

_____

[6]Section 352 of the California Evidence Code allows a trial court, in its discretion, to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or misleading the jury."

31

violated Petitioner's constitutional rights.  This evidence was properly admitted to impeach Singletary's credibility.  Singletary testified that she lied in her prior statements to police.  RT at 689, 711-12, 715 and 718.  The June 8, 2006 police interview and the September 20, 2009 letter to the police were admitted to impeach Singletary's credibility.  The admission of the prior domestic violence evidence, if erroneous, only violated Petitioner's constitutional rights "if it had a substantial and injurious effect in determining the jury's verdict."  <u>Brecht</u>, 507 U.S. at 637.  As discussed above, there was overwhelming evidence of Petitioner's guilt.  Petitioner is not entitled to habeas relief on this claim.

F

Petitioner contends that he was subject to vindictive prosecution when the trial court allowed the prosecutor to amend the information to include a charge of great bodily injury and a charge of resisting a police officer resulting in great bodily injury to the police officer.  Amended Pet. at 10.

A complaint was filed on June 9, 2006.  CT 1-6.  After the preliminary hearing, on September 14, 2006, the prosecutor filed an information that added a special allegation and a charge that were not present in the complaint.  <u>Id.</u> at 9-19.  The information added a special allegation in connection with Count 1, that Petitioner had inflicted great bodily injury (on Officer McNeely) within the meaning of section 12022.7(a) of the California Penal Code.  The information also included a third count, resisting a peace officer (Officer McNeely) resulting in serious bodily injury, in violation

32

1   of section 148.10(a) of the California Penal Code.  Petitioner

2   argues that the prosecutor included the additional count and special

3   allegation because Petitioner exercised his right to object and

4   demand his preliminary examination.[7]

5        The state supreme court summarily denied relief on this

6   claim, and there is no reasoned opinion from the lower court.

7   "Section 2254(d) applies even where there has been a summary denial.

8   In these circumstances, [the petitioner] can satisfy the

9   'unreasonable application' prong of § 2254(d)(1) only by showing

10  that 'there was no reasonable basis' for the California Supreme

11  Court's decision.  [A] habeas court must determine what arguments or

12  theories . . . could have supporte[d] the state court's decision;

13  and then it must ask whether it is possible fairminded jurists could

14  disagree that those arguments or theories are inconsistent with the

15  holding in a prior decision of [the U.S. Supreme Court.]"  <u>Cullen v.</u>

16  <u>Pinholster</u>, 131 S. Ct. 1388, 1402 (2011) (omission in original)

17  (internal quotation marks and citations omitted).  After a thorough

18  review of the state court record, the Court concludes that

19  Petitioner has failed to meet this high threshold.

20       A prosecutor violates a defendant's due process rights

21  when he brings additional charges solely to punish the defendant for

22

23       [7]Petitioner argues that in evaluating this claim, the Court
    should consider his argument that the trial court erred in granting
24  the prosecution a continuance of the preliminary examination, thereby
    violating sections 859b (setting time for preliminary examination) and
25  1050 (procedures for continuance) of the California Penal Code.
    Traverse at 9.  The Court has already dismissed these claims for
26  failure to reference any specific federal, constitutional guarantee,
    case, or principle in relation to these claims in state court.  Docket
27  No. 65 at 8.  The Court declines to reconsider its ruling.

28                                      33

exercising a constitutional or statutory right.  See Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978).  The defendant has the burden to show that "charges of increased severity were filed because the accused exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." United States v. Gallegos-Curiel, 681 F.2d 1164, 1168 (9th Cir. 1982).  The defendant must show that the prosecutorial conduct would not have occurred "but for" the prosecutor's "hostility or punitive animus towards the defendant because he has exercised his specific legal rights."  Id. at 1168-69; see also United States v. Frega, 179 F.3d 793, 802 (9th Cir. 1999) (no vindictiveness where defendant could not show that but for animus prosecutor would not have filed superseding indictment).  The burden then shifts to the prosecutor to show a nonvindictive reason for bringing the charges. Gallegos-Curiel, 681 F.2d at 1168.

However, as Respondent correctly points out, in the pretrial setting, there is no presumption of vindictiveness when the prosecution increases the charges or the potential sentence.  Id. at 1169; see also Frega, 179 F.3d at 801-02  (no presumption of vindictiveness where prosecutor filed superseding indictment following defendants' successful motion to dismiss).  The Supreme Court has recognized the importance of allowing a prosecutor the freedom to modify the charges against a defendant prior to trial and does not presume vindictiveness when the prosecution increase the charges prior to trial:

> In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for

34

further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized . . . . A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct.

United States v. Goodwin, 457 U.S. 368, 381-82 (1982).  The Supreme Court specifically noted that a "defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor.  Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates."  Id. at 381.

Moreover, amending the information to include additional charges is allowed under California law.  Under section 739 of the California Penal Code, "the law is settled that unless the magistrate makes factual findings to the contrary, the prosecution may amend the information after the preliminary hearing to charge any offense shown by the evidence adduced at the preliminary hearing provided the new crime is transactionally related to the crimes for which the defendant has previously been held to answer."  People v. Superior Court (Mendella), 33 Cal. 3d 754, 764 (1983) (internal quotation marks omitted), superseded by statute on other grounds.

Here, testimony at the preliminary hearing supported the special allegation and count added by the prosecutor.  Officer McNeely testified that Petitioner inflicted great bodily injury on him by dragging him from a moving vehicle (CT at 40-43, 73-75, and 83) and that Petitioner forcibly resisted arrest (CT at 34-37, 63-69, and 82-83).

The California Supreme Court's denial of this claim is in accordance with clearly established federal law and supported by the record.  Accordingly, Petitioner has failed to show that there was no reasonable basis for the California Supreme Court's denial of this claim.  Petitioner is not entitled to habeas relief on this claim.

G

Petitioner contends that the "trial court constitutionally violated [his] rights when it 'Failed to conduct a marsden motion, coerced the petitioner into pro per status, and prejudicially denied petitioner advisory counsel' (even thought the court knew that [he] was mentally disabled, thus also violatinf the law of the ADA." Amended Pet. at 10.  Petitioner raised these claims to the California Supreme Court in September 2009, Docket No. 54-2 at 86-120, and the Court looks to that petition for review in evaluating Petitioner's claims.  Stated more specifically, Petitioner argues that the trial court should have held <u>Marsden</u> hearings on October 6, 2006, and October 18, 2007, when he voiced dissatisfaction with his attorneys and sought to represent himself; that the trial court erred in allowing him to represent himself; and that the trial court

erred in denying him advisory counsel.

Marsden Claim: Petitioner contends that the court erred in failing to hold a Marsden hearing on October 6, 2006, and October 18, 2007, when he sought to represent himself.

Prior to October 6, 2006, Petitioner filed a motion seeking substitution of counsel, which was denied.  CT at 922.  In response, he filed a motion to proceed pro per.  Id.  On October 6, 2006, Petitioner appeared before the court on this motion.  Id. at 917-930.  The court emphasized to Petitioner that it would be tough to proceed pro per; reminded him that there was no law library where Petitioner was housed; and informed Petitioner that the court could not guarantee transfer to a jail facility with a law library.  He also warned Petitioner: "you do have the right to [represent yourself].  But what you don't have the right to do is flip back and forth, back and forth on this thing and delay these proceedings by changing your mind [and later requesting counsel]."  Id. at 921.  Petitioner confirmed that he understood the court's warnings but also complained that the proceedings had already been delayed for four months due to "the error of the courts and [appointed] counsel."  Id.  Petitioner contends that this statement should have triggered a Marsden hearing.

The transcript of the October 18, 2007 proceedings is not in the record, but the clerk's minutes indicate that Petitioner was granted pro per status after a hearing on his Faretta motion.  Petitioner appears to argue that when his desire to represent himself is triggered by his dissatisfaction with counsel's

performance, the trial court should *sua sponte* inquire as to whether counsel has been ineffective.

The Court finds that the state court's denial of this claim was not an unreasonable application of, or contrary to, clearly established federal law.  There is no clearly established Supreme Court precedent imposing such an obligation on trial courts. Moreover, on October 6, 2006, there was no reason for the trial court to inquire into Petitioner's dissatisfaction with his counsel since it had been recently addressed in his motion for substitution of counsel.  Habeas relief is denied on this claim.

Coercion into Pro Per Status: Petitioner argues that when a defendant represents himself because he cannot obtain alternative counsel, his Sixth Amendment right to counsel has been violated. In essence, he is arguing that his request for self-representation was not unequivocal.

Under § 2254(d), habeas relief depends on the holdings of the U.S. Supreme Court. Faretta v. California, 422 U.S. 806 (1975) is the only relevant holding, and that case does not elaborate on any standard for determining whether a request is unequivocal. However, the record supports the state court's denial of this claim. Petitioner was perpetually dissatisfied with his attorneys[8] and sought to proceed pro per multiple times, in part hoping to obtain substitute counsel.  The trial court repeatedly found that counsel had provided effective assistance of counsel and that Petitioner's

---

[8]Petitioner's motion for substitute counsel was granted at least four times.  See CT at 449 (appointment of Patrick Hetrick); 454 (James Giller); 454 (Dave Byron); and 949 (Les Chettle).

complaints were disagreements over trial tactics.

Because Faretta's holding is a generalized one, the state courts have more leeway in their application of it, see Yarborough v. Alvarado, 541 U.S. 541 U.S. 652, 664 (2004), and the state court could reasonably conclude that Petitioner's complaints about counsel's performance did not render his requests to proceed pro per unequivocal. The state court's denial of this claim was not an unreasonable application of the holding of Faretta, nor was it an unreasonable determination of the facts.

Appointment of Advisory Counsel: Petitioner fails to show that the California Supreme Court's denial of his claim was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court. There is no Sixth Amendment right to advisory counsel. See McKaskle v. Wiggins, 465 U.S. 168, 183 (1984); United States v. Moreland; 622 F.3d 1147, 1155 (9th Cir. 2010). Habeas relief is therefore denied on this claim.

H

Petitioner contends that the trial court violated his rights when it "violated the constitutional mandate prohibiting the investigatory procedures beyond the 48 hour period, and specifically to build a case upon [Petitioner]." Amended Pet. at 10.

On July 13, 2009, Petitioner filed a "Motion to Dismiss for Pre-Arraignment Delay and Failure to Make Timely Probable Cause Determination." CT at 1036-1049. Petitioner was arrested on June 7, 2006 at 1:11 a.m. He was arraigned on June 9, 2006 at 2:00 p.m.

Petitioner argues that the 12-hour delay in arraignment was unreasonable and solely for the purpose of investigation.  Id. at 1045.  He also argues that the delay prejudiced his ability to alert his counsel to the need for certain time-sensitive investigations, e.g. confirming Singletary's injuries.  Id. at 1046.  After hearing argument, the trial court denied the motion to dismiss: "Essentially, the evil of the detention would be gathering evidence from the defendant to be used at trial.  Since nothing was gathered from the defendant during that period of time, motion is denied." RT [7/30/2009] at 9-10.

Petitioner appears to be arguing that the arraignment delay violated section 825 of the California Penal Code,[9] and violated his due process rights under the Fifth and Fourteenth Amendments, CT at 1036 and 1047, and his Fourth Amendment rights, CT 1038-39.  It is true that Petitioner was not arraigned within 48 hours.  However, federal habeas corpus relief does not lie for errors of state law.  See Swarthout, 562 U.S. at 222.  The Court therefore turns to Petitioner's claim of constitutional violations.

"[T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to [the defendant's] right[] to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." United States v. Marion, 404 U.S. 307, 324 (1971).  The defendant

---

[9] Section 825 of the California Penal Code requires arraignment "without unnecessary delay, and in any event, within 48 hours after [the defendant's] arrest."  Cal. Penal Code § 825(a)(2).

must prove that (1) he suffered actual, non speculative prejudice from the delay and (2) the delay, when balanced against the prosecution's reasons for it, offends those "fundamental conceptions of justice which lie at the base of our civil and political institutions." United States v. Lovasco, 431 U.S. 783, 789-90 (1977) (internal quotation marks omitted).  The Court presumes correct the trial court's factual finding that no evidence was collected from Petitioner to be used against him at trial during the delay.  28 U.S.C. § 2254(e)(1).  In addition, Petitioner's claims of prejudice are speculative.  It is unclear how Petitioner's timely arraignment would have prevented Singletary from speaking with police on June 8, 2006, or affected her statements.  It is also speculative to assume that Petitioner was prejudiced by the inability to tell counsel to immediately investigate Singletary's injuries, especially since Singletary testified that Petitioner did not hit her that day.  RT at 683.  Petitioner has failed to show that he suffered actual, non speculative prejudice from the 12-hour delay.  Accordingly, the delay in arraignment did not violate his due process rights.

The Fourth Amendment requires a "timely judicial determination of probable cause as a prerequisite to detention." Gerstein v. Pugh, 420 U.S. 103, 126 (1975).  However, Stone v. Powell, 428 U.S. 465, 481-82, 494 (1976), bars federal habeas review of Fourth Amendment claims unless the state did not provide an opportunity for full and fair litigation of those claims.  Even if the state courts' determination of the Fourth Amendment issues is

41

improper, it will not be remedied in federal habeas corpus actions so long as the petitioner was provided a full and fair opportunity to litigate the issue.  See Locks v. Sumner, 703 F.2d 403, 408 (9th Cir. 1983).  All Stone v. Powell requires is the initial opportunity for a fair hearing.  Such an opportunity for a fair hearing forecloses this court's inquiry upon habeas petition into the trial court's subsequent course of action, including whether or not the trial court made any express findings of fact.  See Caldwell v. Cupp, 781 F.2d 714, 715 (9th Cir. 1986).  The existence of a state procedure allowing an opportunity for full and fair litigation of Fourth Amendment claims, rather than a defendant's actual use of those procedures, bars federal habeas consideration of those claims. See Gordon v. Duran, 895 F.2d 610, 613-14 (9th Cir. 1990) (whether or not defendant litigated 4th Amendment claim in state court is irrelevant if he had opportunity to do so under California law). California state procedure provides an opportunity for full litigation of any Fourth Amendment claim.[10]  Petitioner had the chance to file a motion to dismiss raising this issue, and the trial court held argument on the motion.  Because Petitioner had an opportunity to fully and fairly litigate this claim, this claim is not cognizable in federal habeas.

I

---

[10]Courts have found no opportunity for full and fair litigation existed in state court only in exceptional cases.  See, e.g., Anderson v. Calderon, 232 F.3d 1053, 1068 (9th Cir. 2000), overruled on other grounds by Osband v. Woodford, 290 F.3d 1036, 1042 (9th Cir. 2002). (petitioner did not benefit from opportunity for full and fair litigation in California courts because Fourth Amendment claim at issue did not exist until years after petitioner's arrest and trials)

Petitioner raises a claim of ineffective assistance of counsel.  In his traverse, he claims that he received ineffective assistance of counsel from William DuBois, William Cole, and Barbara Thomas. Traverse at 14 and 19-20.  These claims are unexhausted. <u>See</u> Docket No. 60.  The only exhausted claims of ineffective assistance of counsel are the ones he has presented to the California Supreme Court: ineffective assistance of counsel for purported failure to object to hearsay at Petitioner's preliminary hearing (Docket No. 54, Respondent's Ex. E); and ineffective assistance of counsel for failure to obtain evidence showing that Petitioner was not the cause of the injury suffered by Singletary (Docket No. 54, Respondent's Ex. C).  These are the only two ineffective assistance of counsel claims that the Court may address.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  <u>Id.</u>  The right to effective assistance of counsel applies to the performance of both retained and appointed counsel without distinction.  <u>See</u> <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 344-45 (1980).

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must establish two things.  First, he

43

must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Strickland, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.

The Strickland framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. See Cullen, 131 S. Ct. at 1403; Williams (Terry) v. Taylor, 529 U.S. 362, 404-08 (2000).  A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254.  See Cullen, 131 S. Ct. at 1410-11; Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (same); Premo v. Moore, 131 S. Ct. 733, 740 (2011) (same).  The general rule of Strickland, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA."  Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  When § 2254(d) applies, "the question is not whether counsel's actions were reasonable.  The

44

question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Harrington</u>, 131 S. Ct. at 788.

<u>Failure to object</u>: Petitioner argued that had counsel "objected to Officer McNeely's testimony about what Debra Singletary told Officer Jim, that objection would have been sustained and there would not have been testimony about the domestic violence offense said to have been suffered by Debra Singletary and there would not have been a basis for Officer McNeely to have arrested Mr. Meyers and — unless other testimony had been available, there would have been no holding order." Docket No. 54-2 at 15-22. Section 1203.1 of the California Evidence Code allows for hearsay to be offered at a preliminary examination. Multiple hearsay is not allowed at a preliminary hearing. <u>See</u> <u>Whitman v. Sup. Ct.</u>, 54 Cal.3d 1074 (1991).

Respondent correctly points out that Officer McNeely's statement was being conveyed for the non-hearsay purpose of explaining his decision to arrest Petitioner, and was not being admitted for the truth of the matter. <u>See</u>, <u>e.g,</u>., Cal. Evid. Code § 1299 (hearsay is evidence of a statement that was made by someone other than the witness testifying and being offered to prove the truth of the matter stated). Officer McNeely explained that after Officer Jim told him that Petitioner had hit and bit Singletary, he was then required to arrest Petitioner for domestic violence per Oakland Police Department policy. CT at 76. Officer McNeely's testimony about Officer Jim's statement therefore was not hearsay.

See, e.g., People v. King, 140 Cal. App. 2d 1, 4-5 (Cal. Ct. App. 1956) (out-of-court statement admissible not to prove truth of the matter asserted, but to establish probable cause to effect the search and seizure).  Moreover, Petitioner cannot show prejudice. There was other admissible and unchallenged testimony supporting the domestic violence offense.  Officer Jim also testified at the preliminary hearing as to Singletary's statements about Petitioner hitting her and having a gun in the car.  CT at 80-81 and 84-86. Accordingly, the state court's denial of this ineffective assistance of counsel claim was neither an unreasonable application of, or contrary to, clearly established Federal law; nor was it an unreasonable determination of the facts.

Failure to meet: Petitioner contends that his initial trial counsel's failure to meet with him for nearly three weeks constituted ineffective assistance because it prevented him from advising counsel of important photographs and videos that would establish that Petitioner had not assaulted Singletary and from understanding the law regarding the timing of the preliminary examination.  Docket No. 54-1 at 81-86.  During that time, another attorney appeared on behalf of the appointed attorney and handled court appearances.  Petitioner does not explain why he did not ask this attorney to tell his appointed attorney to obtain the photographs and videos, and why he did not discuss the preliminary examination with this attorney.  Nor does he establish that the check cashing place had videos and photos of Singletary.  Moreover, effectiveness of counsel is not measured by the frequency and/or

46

duration of the counsel's meetings with her client.   Courts have

held that the "brevity of consultation time between a defendant and

his counsel, alone, cannot support a claim of ineffective assistance

of counsel."   <u>Murray v. Maggio</u>, 736 F.2d 279, 282 (5th Cir. 1984);

<u>United States ex rel. Bradley v. McMann</u>, 423 F.2d 656, 657 (2d Cir.

1970) (rejecting ineffective assistance of counsel claim even though

"[attorney] did not interview or consult with [defendant] until the

day trial was to begin.").   Finally, Petitioner has not made a

factual showing of prejudice.   His assertions are speculative and

conclusory as to what evidence existed and how it would have

supported him.   Conclusory allegations not supported by specifics do

not warrant relief.   <u>Jones v. Gomez</u>, 66 F.3d 199, 205 (1995).

Accordingly, the Court finds that the state court's denial of this

ineffective assistance of counsel claim was neither an unreasonable

application of, or contrary to, clearly established Federal law; nor

was it an unreasonable determination of the facts.

J

Petitioner alleges that the trial court violated

petitioner's right "to a speedy preliminary hearing within the 10-

day limit as specified in the California Penal code sec. 859b."

Amended Pet. at 9.   In relevant part, section 859b states:

> Both the defendant and the people have the right to a
> preliminary examination at the earliest possible time, and
> unless both waive that right or good cause for a
> continuance is found as provided for in Section 1050, the
> preliminary examination shall be held within 10 court days
> of the date the defendant is arraigned or pleads,
> whichever occurs later . . . . The magistrate shall
> dismiss the complaint if the preliminary examination is
> set or continued more than 60 days from the date of the
> arraignment [or] plea . . . .

47

Cal. Penal Code § 859b.  Petitioner entered his plea of not guilty on July 6, 2006, and waived his right to have a preliminary examination within 10 days.  CT at 174.  On August 17, 2006, the date first set for preliminary hearing, the prosecutor moved for a continuance under section 1050 of the California Penal Code because a key witness, the victim Officer McNeely, was on vacation.  Id. at 356 and Docket No. 54-1 at 53.  Defendant objected to the continuance, arguing that the prosecutor had not demonstrated good cause.  Docket No. 54-1 at 53.  The preliminary hearing was held on September 1, 2006, 57 days after Petitioner had entered his not guilty plea.  Id. and CT at 21-107.

Petitioner argues that section 859b created a liberty interest that is protected by the Fourteenth Amendment, and that therefore the violation of section 859b violates Petitioner's due process rights.  Traverse at 15-16.  A state law creates a "liberty interest" protected by the Due Process Clause if the law: (1) contains "substantive predicates" governing official decision making; (2) contains "explicitly mandatory language" specifying the outcome that must be reached if the substantive predicates are met; and (3) protects "some substantive end."  See Bonin I, 59 F.3d at 842.  Several panels of our court of appeals also have required that the state law violation result in the deprivation of a substantive right protected by the Constitution.  See, e.g., Bonin v. Calderon, 77 F.3d 1155, 1161-62 (9th Cir. 1996) ("Bonin II") (even assuming violation of state law in setting execution date, no federal habeas claim because there is no deprivation of federal substantive right);

48

<u>Bonin I</u>, 59 F.3d at 842 (California statute which gives defendant in capital case right to have two defense attorneys argue on his behalf does not create protected liberty interest cognizable in federal habeas because it contains neither "substantive predicates" nor "explicitly mandatory language," and there is no federal constitutional right to have two attorneys make closing arguments).

The state law must provide more than merely procedure. <u>See</u> <u>id.</u>. Procedural requirements do not create a liberty interest unless they cause a "significant substantive reduction" in decision making or create an imperative that mandates action unless certain clearly-defined exceptions are found to apply. <u>See</u> <u>Chaney v. Stewart</u>, 156 F.3d 921, 925 (9th Cir. 1998) (finding no liberty interest where Arizona statute provides trial court with broad discretion to determine whether to appoint expert witnesses). <u>But cf. id.</u> at 927-33 (Reinhardt, J., dissenting) (arguing that exercise of discretion alone does not defeat creation of liberty interest and that Arizona statute creates liberty interest where it imposes an absolute duty on trial court to appoint expert witnesses who are "reasonably necessary").

As an initial matter, the Court notes that Petitioner has not demonstrated that there was a violation of section 859b. Section 859b provides for a "good cause" continuance, as long as the preliminary examination is held within 60 days of the arraignment or plea, whichever is longer. Petitioner's preliminary examination was held within 60 days of his plea. Petitioner argues that the prosecutor failed to demonstrate good cause because he failed to

**49**

diligently and timely ensure the victim's presence for the original trial dates.  Docket No. 54-1 at 77.  However, whether the prosecutor demonstrated the good cause necessary under section 859b is a state law issue, and federal habeas relief is unavailable for alleged violations of state law or alleged error in the interpretation or application of state law.[11]  See Swarthout, 562 U.S. at 222.

There is no federal constitutional right to a preliminary examination within 10 days of either a defendant's plea or arraignment.  Assuming arguendo that section 859b created a protected liberty interest, to prove a due process violation, Petitioner must prove that (1) he suffered actual, non speculative prejudice from the delay and (2) the delay, when balanced against the prosecution's reasons for it, offends those "fundamental conceptions of justice which lie at the base of our civil and political institutions."  Lovasco, 431 U.S. at 789-90.  Petitioner has only made conclusory statements that he has been prejudiced by not having a preliminary examination within 10 days of his arraignment or, in the alternative, within 10 days of his plea.  He has not demonstrated actual, non speculative prejudice.  Petitioner therefore has failed to show a due process violation.  Habeas relief is denied on this claim.

V

---

[11]In Petitioner's November 24, 2009, petition for review to the California Supreme Court, he argues that section 859b should be read to require a dismissal ten courts days after either a plea or arraignment has been entered.  Docket No. 54-1 at 57.

Petitioner requests that the Court hold "an evidentiary hearing within the means of the Supreme Court's holding in both 'Martinez v. Ryan' and 'Trevino v. Thaler,'" and defer ruling on his habeas petition until the hearing has been conducted.   Docket No. 84.   Petitioner's request is DENIED.   In Martinez v. Ryan, 132 S. Ct. 1309 (2012), the Supreme Court held that a procedural default does not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective and state law requires that an ineffective assistance of trial counsel claim be raised in an initial-review collateral proceeding.   Martinez, 132 S. Ct. at 1316-21.   In Trevino v. Thaler, 133 S. Ct. 1911 (2013), the Supreme Court extended its holding in Martinez to include states whose procedural framework did not expressly require the defendant to raise the claim in an initial-review proceeding, but, by reason of its design and operation, make it highly unlikely that in a typical case a defendant will have a meaningful opportunity to raise the claim. Trevino, 133 S. Ct. at 1921.   These cases are inapplicable since this Court has not found that any of Petitioner's claims are procedurally defaulted.[12]   Accordingly, Petitioner's request for a Martinez/Trevino evidentiary hearing is DENIED.

VI

---

[12]Petitioner's confusion perhaps stems from the Court's May 15, 2014 order denying Petitioner's motion for a Rhines stay, wherein the Court noted, without deciding, that it was likely that Petitioner's unexhausted claims would be considered untimely, which would require this Court to deny those claims as procedurally defaulted.

1    For the foregoing reasons, the petition for a writ of

2 habeas corpus is DENIED.

3    Further, a Certificate of Appealability is DENIED.  See

4 Rule 11(a) of the Rules Governing Section 2254 Cases.  Petitioner

5 has not made "a substantial showing of the denial of a

6 constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner

7 demonstrated that "reasonable jurists would find the district

8 court's assessment of the constitutional claims debatable or wrong."

9 Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Petitioner may not

10 appeal the denial of a Certificate of Appealability in this Court

11 but may seek a certificate from the Court of Appeals under Rule 22

12 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the

13 Rules Governing Section 2254 Cases.

14    The Clerk is directed to enter Judgment in favor of

15 Respondent and against Petitioner, terminate any pending motions as

16 moot and close the file.

17    IT IS SO ORDERED.

18

19 DATED   _03/30/2015_                    _____

20                                        THELTON E. HENDERSON
                                          United States District Judge
21

22 G:\PRO-SE\TEH\HC.11\Meyers-11-5327-deny habeas.wpd

23

24

25

26

27

28                              52